UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

BAD HOLDINGS, LLC,

      Plaintiff,

v.                                                                                    Civil Action No. 21-cv-00427

HALLIBURTON ENERGY SERVICES, INC.,

      Defendants.

## COMPLAINT

**COMES NOW**, the Plaintiff, and files this Complaint against the above named Defendant, and in support thereof would show unto the Court the following:

## PARTIES

1. Plaintiff, BAD Holdings, LLC ("BAD Holdings") is a Mississippi limited liability company with its principal place of business located at 95 Pleasant Hill Road, Nesbit, Mississippi 38651.

2. Defendant, Halliburton Energy Services, Inc. ("Halliburton") is a corporation organized under the laws of the State of Delaware with its principal place of business located at 3000 N Sam Houston Parkway, Houston, Texas 77032. Halliburton may be served with process through its registered agent, Capitol Corporate Services, Inc., 206 E. 9th Street, Suite 1300, Austin, Texas 78701, or wherever it may be found.

## JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a) because complete diversity exists among the parties, and the amount in controversy exceeds $75,000, exclusive of interest and costs, as set forth herein.

4. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because the acts and omissions of Halliburton giving rise to this Complaint substantially occurred, in whole or in part, within the Western District of Wisconsin, and the real and personal property made subject to this Complaint is located within the Western District of Wisconsin.

## FACTUAL ALLEGATIONS

5. Northern Rail & Transload, LLC, Northern Industrial Sands, LLC and/or NI Sand Holding, LLC (collectively, "NIS") was the owner of certain real property located in the Town of Dovre, Wisconsin, which included a storage yard (hereinafter, the "Subject Property").

6. Prior to December 1, 2020, Halliburton owned and/or leased from third-parties approximately eighty-five (85) railcars (the "Railcars") which were stored on the Subject Property pursuant to a business arrangement between NIS and Halliburton.

7. Prior to December 1, 2020, Halliburton caused certain of the Railcars to become loaded with sand. These and the other Railcars continue to remain on the Subject Property.

8. On April 24, 2020, a separate creditor of NIS, Dougherty Funding, LLC, initiated an action in the Circuit Court of Barron County, Wisconsin, Case No. 20-CV-114, to appoint a receiver over the assets of NIS, including the Subject Property, pursuant to Wis. Stats. Chapter 128.

9. On April 29, 2020, the Circuit Court of Barron County, Wisconsin, entered an Order which appointed Michael S. Polsky, Esq., as the Receiver over the assets of NIS.

10. On June 22, 2020, the Circuit Court of Barron County, Wisconsin, entered an Order authorizing the Receiver to sell the Subject Property at a public auction free and clear of all liens, mortgages, claims, interests and encumbrances of any kind or nature, all of which would attach to the sale proceeds of the public auction.

11. Halliburton received legal and actual notice of the public auction of the Subject Property. On August 10, 2020, Halliburton filed a proof of claim with respect to the Railcars in the Receivership proceedings in the Circuit Court of Barron County, Wisconsin.

12. Halliburton had a duty to remove or otherwise transport the Railcars off the Subject Property prior to any sale of the Subject Property.

13. Following the public auction, on November 30, 2020, the Subject Property was sold to BAD Holdings free and clear of all liens, mortgages, claims, interests and encumbrances of any kind or nature, all of which would attach to the sale proceeds of the public auction.

14. On December 1, 2020, a Receiver's Deed for the Subject Property was filed in the land records of Barron County, Wisconsin.

15. Since December 1, 2020, BAD Holdings has owned the Subject Property and operated same as a storage yard and transload facility for railcars.

16. Since December 1, 2020, the Railcars have remained on the Subject Property.

17. The storage rates for the Railcars to be stored on the Subject Property are $6.00 per day per car. Additionally, switching fees of $350 per car, cherry-picking fees of $450 per car, and transportation fees will apply when the Railcars are removed from the Subject Property.

18. Additionally, the costs to unload and dispose of the sand in certain Railcars is approximately $5.83 per ton of sand, for a total of approximately $4,750 per car loaded with sand (including necessary cherry-picking and switching fees). In the event the Railcars are transported without the sand being first removed, the transportation fees per car increase substantially.

19. Despite notice and demand, since December 1, 2020, Halliburton has refused to pay storage fees or other costs for the Railcars which have been stored on the Subject Property. Haliburton has further refused to pay the costs of unloading and disposing of the sand in certain Railcars or otherwise transport the Railcars from the Subject Property.

20. The storage fees of $6.00 per day per car for the approximate eighty-five (85) Railcars on the Subject Property from December 1, 2020 through the filing of this Complaint total approximately $107,610, and continue to accrue each day thereafter.

21. As a result of the Railcars remaining on the Subject Property, BAD Holdings has also been unable to rent the storage space occupied by the Railcars to other customers, thereby resulting in a substantial loss of business revenue to BAD Holdings.

## **COUNT ONE – TRESPASS**

22. BAD Holdings adopts and incorporates the allegations contained in each of the above numbered paragraphs as if fully set forth herein.

23. Since December 1, 2020, BAD Holdings has owned the Subject Property, free and clear of all liens, mortgages, claims, interests and encumbrances of any kind or nature, all of which attached to the sale proceeds of the Subject Property.

24. Since December 1, 2020, Halliburton has intentionally and/or negligently caused the Railcars to remain on the Subject Property without the consent of BAD Holdings, thereby interfering with BAD Holdings exclusive right to use and enjoy the Subject Property.

25. As a proximate result of Halliburton's trespass, BAD Holdings has suffered and will continue to suffer monetary damages including, but not limited to, storage fees, switching fees, cherry-picking fees, costs of sand unloading and disposal, and transportation costs of the Railcars, in addition to lost business revenue resulting from the inability to rent the storage space currently occupied by the Railcars to other customers.

## **COUNT TWO – UNJUST ENRICHMENT/QUANTUM MERUIT**

26. BAD Holdings adopts and incorporates the allegations contained in each of the above numbered paragraphs as if fully set forth herein.

27. Since December 1, 2020, Halliburton has received the benefit of the Railcars being stored on the Subject Property without payment or other compensation to BAD Holdings.

28. Halliburton has had actual knowledge and appreciation of this benefit, as it filed a proof of claim in the Receivership proceedings with respect to the Railcars prior to the Subject Property being sold to BAD Holdings and was aware of the sale to BAD Holdings.

29. It would be inequitable for Halliburton to retain the benefit of the Railcars being stored on the Subject Property without payment to BAD Holdings of storage fees since at least December 1, 2020.

30. Moreover, and to the extent BAD Holdings is forced to remove the Railcars at its expense, it would be inequitable for Halliburton to retain the benefit of having its Railcars unloaded and transported from the Subject Property without payment to BAD Holdings.

31. BAD Holdings therefore seeks monetary damages for the unjust enrichment of, and benefits conferred on Halliburton, including, but not limited to, storage fees, switching fees, cherry-picking fees, costs of sand unloading and disposal, and transportation costs of the Railcars, in addition to lost business revenue resulting from the inability to rent the storage space currently occupied by the Railcars to other customers.

## COUNT THREE – INJUNCTIVE RELIEF

32. BAD Holdings adopts and incorporates the allegations contained in each of the above numbered paragraphs as if fully set forth herein.

33. In addition, or in the alternative to, the other remedies set forth herein, BAD Holdings respectfully requests this Court grant injunctive relief in the form of an Order which requires Halliburton, at its expense, to immediately remove the Railcars from the Subject Property, to pay all costs to remove and dispose of sand in certain Railcars, to pay storage fees since December 1, 2020 through the date of removal, and to pay any cherry-picking and switching fees which may be applicable to remove and transport the Railcars.

## COUNT FOUR – INTERFERENCE WITH BUSINESS RELATIONS

34. BAD Holdings adopts and incorporates the allegations contained in each of the above numbered paragraphs as if fully set forth herein.

35. Since December 1, 2020, BAD Holdings has the ability to rent the storage space on the Subject Property currently being occupied by the Railcars and has prospective contracts for such storage space with third-parties in the railcar business similarly situated to Halliburton.

36. Since December 1, 2020, Halliburton has interfered with those prospective contracts by causing the Railcars to remain on the Subject Property.

37. Halliburton's interference has been intentional, as demonstrated by Halliburton having notice of the sale of the Subject Property well before December 1, 2020.

38. Halliburton's interference with the business relations of BAD Holdings is unjustified and unprivileged, since BAD Holdings has not consented to the Railcars being on the Subject Property without compensation to BAD Holdings.

39. As a proximate result of Halliburton's interference, BAD Holdings has and will continue to suffer monetary damages including, but not limited to, lost revenue from storage fees, switching fees, cherry-picking fees and other revenue generated from the storage space being occupied by the Railcars and which BAD Holdings has been unable to utilize.

## DEMAND FOR JURY TRIAL

40. BAD Holdings hereby demands the right to a trial by jury on all applicable counts stated herein and to determine the amount of damages owed by Halliburton.

**WHEREFORE PREMISES CONSIDERED**, BAD Holdings respectfully requests that a judgment be entered against Halliburton which:

(1) Awards BAD Holdings daily storage fees for the Railcars being on the Subject Property since at least December 1, 2020 until they are removed; and

(2) Awards Bad Holdings punitive damages as provided by law; and

(3) Awards BAD Holdings the costs to unload and dispose of certain Railcars filled with sand, the costs of switching and cherry-picking fees applicable to remove all Railcars, and the costs of transporting all Railcars off the Subject Property; or

(4) In the alternative to #2, orders Halliburton, at its expense, to unload and dispose of certain Railcars filled with sand and transport all Railcars off the Subject Property, and to pay to BAD Holdings any switching or cherry-picking fees to remove the Railcars; and

(5) Awards BAD Holdings its attorneys' fees and costs of this action, and pre-judgment and post-judgment interest on any such amounts as provided by law.

(6) BAD Holdings, LLC requests any further relief this Honorable Court deems proper, whether legal or equitable in nature.

Dated:  June 30, 2021.

STAFFORD ROSENBAUM LLP
By   /s/ Matthew V. Fisher
Matthew V. Fisher, SBN 1088968
1200 N. Mayfair Road, Suite 430
Milwaukee, WI  53226
Email:mfisher@staffordlaw.com
414.982.2867
Attorneys for the Plaintiff
